IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**TONY EPPS,**

**and**

**MATTHEW SULLIVAN,**
**For themselves and on behalf**
**of all others similarly situated,**

    **Plaintiffs,**

**v.**                                                                     **Case No.:**    2:17cv562

**SCAFFOLDING SOLUTIONS, LLC,**

    **Defendant.**

## **COMPLAINT**

COME NOW the Plaintiffs, Tony Epps (hereinafter "Epps") and Matthew Sullivan (hereinafter "Sullivan"), by counsel, and file this Complaint to recover unpaid wages and damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq* ("FLSA"), and for breach of contract, and for other damages from Defendant as set forth below.

### **Parties and Jurisdiction**

1. This Court has jurisdiction over Defendant pursuant to 16(b) of the FLSA, 29 U.S.C. § 216(b) and 28 U.S.C. § 1337 relating to "any civil action or proceeding arising under any Act of Congress regulating commerce."

2. Subject matter jurisdiction is invoked under 28 U.S.C. § 1331.

3. Venue is proper pursuant to 28 U.S.C. § 1391.

4. Epps resides in Norfolk, VA and worked for Defendant during a portion of the three years immediately preceding the filing of this Complaint (the "applicable time period").

5. Sullivan resides in Chesapeake, VA and worked for Defendant during a portion of the applicable time period.

6. Defendant maintains eight branches total in Virginia, North Carolina, South Carolina and Washington, D.C.

7. Plaintiffs and similarly situated individuals are present and former erectors, assistant erectors and foremen at Defendant who worked at its Chesapeake branch.

8. Plaintiffs and similarly situated employees of the Defendant were hourly employees who were not paid for travel time, and as a result, were not paid the minimum wage required by the FLSA for travel time.

9. Indeed, the only person who was paid during travel time was the person who was physically driving the vehicle, not any of the passengers who were obviously not free to do what they wanted to do with their time when they were driving from their branch to the work location, between work locations, and driving back to their branch.

10. Plaintiffs engaged in travel time of a minimum of an hour per day, and as much as five hours per day when they were dispatched to jobs throughout the region from their branch in Chesapeake.

11. Plaintiffs periodically worked through lunch, 30 minutes of which was paid, and 30 minutes of which was unpaid, resulting in additional uncompensated time. Plaintiffs also occasionally worked on weekends.

12. When the time Plaintiffs worked through lunch, on weekends, and traveling to and between jobs is aggregated, this resulted in Plaintiffs and similarly situated employees working overtime for which they were not compensated.

13. Defendant failed to compensate Plaintiffs at all for overtime because Defendant uniformly redlined and decreased Plaintiffs' hours worked on the time records the Plaintiffs submitted to Defendant.

14. Defendant regularly reduced the hours turned in by foremen on behalf of themselves and employees.

15. In particular, this was likely to occur if an employee worked more than 40 hours in a week according to his time sheets.

16. If, and when, employees complained, Defendant said it would make up the hours in the following week.

17. Most of the time Defendant failed to make up the hours in the following week, but when it did, the employee was still robbed of the overtime compensation from the initial week when hours were added to a subsequent week.

18. Upon information and belief, the only branch that fails to pay its employees when they start work, but rather pays them when they get to the work site, is Chesapeake.

19. Not surprisingly, the Chesapeake branch used to have 30 employees, but now they are down to only a handful.

20. The foregoing pay policies violated the FLSA both with respect to minimum wage and unpaid overtime during the applicable time period.

21. Plaintiffs are not only entitled to minimum wage for their uncompensated hours, but under the oral contract between the parties, they are entitled to their respective hourly rates.

22. At all times relevant, Defendant was engaged in commerce and the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

23. At all times relevant, Defendant's gross revenue exceeded $500,000.00, and thus Defendant qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

24. At all times relevant, Plaintiffs were individual employees who, while engaged in their employment duties, handled and constructed and worked with and on scaffolds consisting of materials that were moved in or produced for commerce so that each Plaintiff was an individual employee who was engaged in commerce or the production of goods for commerce as required by 29 U.S.C. § 206-207.

25. Pursuant to the foregoing, Defendant qualified as Plaintiffs' employer for purposes of the FLSA.

## Facts

26. Epps and Sullivan worked for Defendant constructing scaffolding and earned $23.00 per hour during the applicable time period.

27. Each day Defendant required Epps and Sullivan to report to work at 6:00am.

28. During the time between 6:00am and 6:30am Defendant knew Plaintiffs were at work because it mandated it.

29. Mondays Defendant conducted a safety meeting between 6:00am and 6:30am.

30. The rest of the week Plaintiffs were gathering up construction materials, filling coolers with water and ice and stowing them on company vehicles, and sometimes Plaintiffs had to move their tools, which they left in the truck overnight, from one vehicle to a different vehicle, and otherwise were preparing to construct scaffolding at the ultimate work location.

31. Defendant would not permit Epps and Sullivan and similarly situated employees to clock in at 6:00am.

32. Defendant would not permit Epps and Sullivan and similarly situated employees to clock in at 6:30am when they left the branch for the construction site.

33. Plaintiffs could only clock in once they arrived at the first construction site which generally was at approximately 7:00am.

34. This resulted in approximately one hour of uncompensated time each morning.

35. Similarly, Defendant required Epps and Sullivan to clock out for lunch, whether they worked through lunch or not.

36. Also, Defendant required Epps and Sullivan to clock out if they had to travel from one work location to another, which frequently was the case, and then clock back in only when they reached the new work location.

37. At the end of the day in the field at the work site Defendant required Epps and Sullivan and similarly situated employees to clock out when they finished, with the result that they were not paid for the return trip to the Chesapeake branch.

38. Defendant actually supplied its foremen, including Epps and Sullivan, with a portable clock which they used to clock in themselves and the other employees when they were out in the field as described above.

39. Plaintiffs and similarly situated employees at Defendant also worked periodically on weekends without proper compensation.

40. This weekend work would have resulted in overtime hours and resulting overtime pay, but for the fact that Defendant decreased the hours worked and recorded and submitted by Plaintiffs on their time records.

41. Plaintiffs are similarly situated to dozens of employees who worked for Defendant during the applicable time period, many of whom are expected to opt into this action presently.

42. As a result of the foregoing, Defendant failed to pay Plaintiffs minimum wage for travel time and for the time before and after they were working on their respective job sites.

43. In addition, Defendant failed to pay Plaintiffs time and a half compensation for most of the overtime hours they worked.

44. Further, Defendant failed to pay Plaintiffs their contractual rate of pay, which varied between $12.00 and $24.00 per hour for each hour they worked (as opposed to merely minimum wage).

45. Defendant had no reasonable or good faith basis for paying Plaintiffs in violation of the FLSA.

46. As a result, Defendant is liable for double the amount of wages due Plaintiffs.

47. Also, Defendant violated the FLSA willfully.

48. First, Defendant and its authorized agents repeatedly reduced the hours reported by the Plaintiffs and the Plaintiffs' foremen, including but not limited to Epps and Sullivan.

49. Second, upon information and belief, Defendant paid its hourly employees correctly at its other seven branches.

### COUNT I –
### Violation of the Federal Fair Labor Standards Act
### (Minimum Wage)

50. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

51. Defendant, as Plaintiffs' employers, were obligated to pay the Plaintiffs for all hours worked at an hourly wage at least equal to that the Federal Minimum Wage, $7.25 per hour.

52. As noted above, Plaintiffs worked at least five to ten hours per week without any wages whatsoever.

53. Plaintiffs seek their attorney's fees incurred and all additional damages authorized by the FLSA.

### COUNT II –
### Violation of the Federal Fair Labor Standards Act
### (Unpaid Overtime)

54. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

55. Defendant, as Plaintiffs' employer, was obligated to pay the Plaintiffs for all overtime hours worked at time and a half their hourly wage.

56. As noted above, Plaintiff worked numerous hours of unpaid overtime.

57. Plaintiffs seek their attorney's fees incurred and all additional damages authorized by the FLSA.

### COUNT III –
### Breach of Contract

58. Plaintiffs adopt by reference the allegations contained in the earlier paragraphs of this Complaint with the same effect as if fully set forth herein.

59. Plaintiffs assented to employment with Defendant and Defendant agreed to pay each Plaintiff a predetermined and mutually agreed upon hourly rate.

60. As set forth above, the compensation structure was ignored by Defendant when it unilaterally decreased the hours reported by Plaintiffs to Defendant, and when it failed to pay Plaintiffs their hourly rate for each hour worked.

61. Plaintiffs performed, in a workmanlike manner, all contractual duties and obligations they owed to Defendant for which full consideration is now due and owing.

62. This suit is brought within three years of the Defendant's breach of each oral pay contract, and Plaintiffs seek three years of unpaid hourly compensation.

63. Defendant's refusal to pay Plaintiffs compensation due and owing as per oral agreement between the parties constitutes a material breach of the compensation agreements resulting in substantial damages.

64. The written and signed consent to join this action of Tony Epps is attached as Exhibit A.

WHEREFORE, Plaintiffs pray that they be awarded judgment on each count against the Defendant, jointly and severally, in such an amount as is proven at trial, plus interest (both pre- and post-judgment), the costs of this action, attorney's fees on Counts I and II, and any other and further relief this Court or jury deems appropriate.

## Jury Demand

Plaintiffs request a trial by jury on all facts so triable.

Respectfully Submitted,

**TONY EPPS and
MATTHEW SULLIVAN,**

DATE: October 26, 2017         BY:   /s/ Christopher Colt North
                                             Of Counsel

Christopher Colt North
VSB # 16955
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone:  (757) 873-1010
Fax:  (757) 873-8375
Email: cnorthlaw@aol.com
*Counsel for Plaintiff*

9