**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

TONY EPPS, et al.,

        Plaintiffs,

v.                             CIVIL ACTION NO. 2:17cv562

SCAFFOLDING SOLUTIONS, LLC,

        Defendant.

## REPORT AND RECOMMENDATION

This Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA" or the "Act") claim is before the Court to resolve overlapping, partially dispositive pretrial motions. Plaintiffs seek additional compensation from their employer, Scaffolding Solutions, LLC ("Scaffolding Solutions" or the "Company"). They primarily challenge the Company's policies relating to compensation for work-related travel and other duties they claim the Company improperly failed to record as compensable time. This collective action now includes 20 Plaintiffs asserting FLSA claims as well as claims premised on an alleged oral contract for employment.

Scaffolding Solutions has moved to decertify the opt-in Plaintiffs who they argue are not sufficiently similarly situated to constitute an appropriate class under the Act. The Company also seeks partial summary judgment, arguing that

1

undisputed facts establish that Plaintiffs have no independent contract claim that is not preempted by the FLSA. The Defendant's motion also argues that Plaintiffs have insufficient evidence to reach a jury on the issue of willfulness or the lack of good faith. (ECF No. 56).

Plaintiffs filed a brief opposing the motion for partial summary judgment and motion to decertify. (ECF No. 71). Plaintiffs also filed their own motion for partial summary judgment, arguing the undisputed facts establish their right to recover for certain unpaid travel time incurred when the travel included an overnight stay. (ECF No. 79).

All these motions were referred to the undersigned for a Report and Recommendation.[1]  The court heard oral argument on March 7, 2019, and the matters are ripe for a recommended decision. For the reasons that follow, this Report recommends that the court DENY Scaffolding Solutions' Motion to Decertify, GRANT IN PART and DENY IN PART the Company's Motion for Partial Summary Judgment, (ECF No. 56), and GRANT Plaintiffs' Motion for Partial Summary Judgment, (ECF No. 79).

---

[1] Defendants also filed a Motion to Dismiss (ECF No. 66) which argued that Plaintiffs' claims of willfulness and of an independent contract could not be plausibly alleged.  Because the Motion to Dismiss challenges the same claims as Defendant's Motion for Partial Summary Judgment, its arguments are subsumed in the analysis of that motion. This Report analyzes those claims under the more stringent Rule 56 standard based on the evidence in the record directed to those claims.

## I.   RECOMMENDED FINDINGS OF MATERIAL FACT

As its name implies, Scaffolding Solutions is a contractor engaged in erecting and dismantling scaffolding.[2] Final Pretrial Order 1 (ECF No. 83 at 1). As a result, nearly all of the work Plaintiffs performed occurred at the jobsites where scaffolding was erected and dismantled.   Plaintiffs traveled to those jobsites in both company-provided vehicles and their personal vehicles.  See Def.'s Mem. Supp. Mot. Decert. And/or Summ. J. 5 (ECF No. 57 at 5) (citing deposition testimony).

Plaintiffs all worked for Scaffolding Solutions as Helpers, Erectors, Foremen, and Drivers for varying periods between October 20, 2014 and April 20, 2018.   Final Pretrial Order 2. Erectors build and dismantle scaffolding at jobsites.   Malik Davis Dep. 12:18-21 (ECF No. 57-2 at 13). Helpers handle material and assist the Erectors from the ground.  M. Davis Dep. 12:21-13:1. Foremen supervise and direct the Erectors, both in the branch office and at the jobsite.  Tony Epps, Sr. Dep. 21:3-22:2 (ECF No. 57-2 at 219-20).   Drivers transport workers between various jobs, both locally and longer distances.  (ECF No. 57 at 4) (citing deposition testimony).   All of the Plaintiffs served as Erectors during the relevant period.   Only

---

[2] The following facts are taken from the depositions submitted to support the cross motions for partial summary judgment, the stipulated facts in the Pretrial Order, or from the Complaint. Any disputes of fact have been resolved in favor of the non-moving party.

one or two were Helpers or worked in the yard at the branch
office. Several performed multiple jobs, including as Foremen,
Drivers, and Erectors. Pls.' Mem. Opp. Summ. J. 7-8 (ECF No. 71
at 7-8).

The parties sharply dispute how the Plaintiffs' workday
began and how their travel to the various jobsites was
initiated. Plaintiffs' evidence is sufficient for reasonable
jurors to conclude that during the relevant time period they
were all required to report to the Chesapeake branch location
where they would receive work assignments, load tools and
personal protective equipment, and sometimes material for
erecting scaffolding. See, e.g., Antoine Davis Dep. 20-21 (ECF
No. 57-1 at 285-86); Epps Dep. 28:5-14; Otis Fulbright Dep.
11:7-21 (ECF No. 57-3 at 12); First Am. Compl. ¶¶ 19-23 (ECF No.
54 at 4). Plaintiffs thus contend that their workday began at
6:00 a.m. when they were required to report to the Chesapeake
branch. Scaffolding Solutions claims that employees were not
required to report initially to the Chesapeake branch, but
could, and often did, drive their personal vehicles to the first
jobsite and receive instructions and work assignments there.
(ECF No. 57 at 5) (citing deposition testimony from individual
plaintiffs). Regardless of whether employees were required to
report to Chesapeake, the Company admits that many did regularly
report there to receive optional company-provided rides to the

worksite.   Michael Kroupa Dep. 41:5-11 (ECF No. 57-7 at 147);
(ECF No. 57 at 5).   Employees riding to the first worksite in
company-provided   transportation   generally   arrived   at   the
Chesapeake branch by 6:00 a.m. (ECF No. 57 at 5).

Prior  to  July  2015,  when  Plaintiffs  arrived  at  the
Chesapeake branch they clocked-in on a timeclock located in the
branch  office.   First  Am.  Compl.  ¶  16;  Epps  Dep.  16:2-13;
Kroupa Dep. 8:12-24.  They were then paid their hourly rate for
the  entire  day,  until  clocking  out  on  their  return  in  the
evening. Kroupa Dep. 10;11-11:3; Mike Wall Dep. 8:7-12 (ECF No.
57-6  at  134).   Beginning  in  July  2015,  Scaffolding  Solutions
implemented  what  it  called  a  "portable  timeclock"  policy.
Kroupa Dep. 7:14-8:8. Pursuant to the portable timeclock policy,
employees  (other  than  Drivers)  were  not  permitted  to  clock-in
until  reaching  the  first  jobsite  for  the  day.   Fulbright  Dep.
20:2-16;  Justin  Switzer  Dep.  50:8-14  (ECF  No.  57-6  at  51);
Kroupa Dep. 15:5-10.   Drivers of company vehicles still clocked-
in  when  they  arrived  at  the  Chesapeake  branch  and  remained  on
the  clock  until  returning  at  the  end  of  the  day.   Brandon
Newsome  Dep.  20:22-21:7  (ECF  No.  57-4  at  21-22);  Matthew
Sullivan Dep. 77:14-20 (ECF No. 57-5 at 333); Kroupa Dep. 14:5-
15.  Other  employees  clocked-in  at  the  first  jobsite  and  were
paid  their  hourly  rate  until  clocking  out  at  the  end  of  their
work  shift  at  the  last  jobsite.   Fulbright  Dep.  20:2-16;  Kroupa

Dep. 14:9-19. Once an employee clocked-in on the portable timeclock, even if employees traveled between jobs during the day, they were paid their hourly rate until clocking-out at the end of the day. Christopher Jackson Dep. 50:9-13 (ECF No. 57-3 at 133); Kroupa Dep. 73:7-74:10. Under the portable time clock policy employees (other than Drivers) clocked-out when leaving the last jobsite and were not paid their hourly rate for return travel to Chesapeake. Kroupa Dep. 69:21-70:18.

In addition to local travel, Scaffolding Solutions crews were sometimes dispatched to jobsites further away which required an overnight hotel stay. E.g., Fulbright Dep. 34:14-35:12; Jackson Dep. 38:2-14; Switzer Dep. 66:14-67:15. During these trips, the Company followed its policy of not paying employees their regular rate unless they were Drivers operating the company-provided transportation. Roger Jetton Dep. 28:18-29:1 (ECF No. 57-7 at 28-29). For all travel, both local and overnight, the Company paid employees (other than Drivers) a mileage stipend, which was reported to the employee as non-taxable income. Jetton Dep. 20:2-11. The mileage stipend is calculated by dividing the employee's hourly rate by 55 and multiplying that number by the total number of miles driven each day. Jetton Dep. 18:21-19:21.

## II.  **ANALYSIS**

Plaintiffs seek compensation for unpaid work and travel time they were allegedly denied after the portable time clock policy began in July 2015.  In filing their Amended Complaint, Plaintiffs omitted an originally asserted count for unpaid straight-time wages under the FLSA and concede that the hourly rate the Company paid would exceed the federal minimum wage for a 40-hour week.  See Monahan v. City of Chesterfield, 95 F.3d 1263, 1282 (4th Cir. 1996) (recognizing FLSA claim for straight time is only cognizable if employers' wage payments violate the statutory minimum wage).  The Plaintiffs' Amended Complaint asserts an FLSA claim for unpaid overtime and a state-law contract claim for unpaid straight time under the terms of a purported oral contract of employment.  Because the parties sharply dispute the requirement that any Plaintiff report to the Chesapeake branch, no party has moved for summary judgment on the entire FLSA claim for unpaid overtime.

Scaffolding Solutions' motion first seeks to decertify the collective action, arguing that Plaintiffs are not sufficiently similar to litigate collectively.  It also argues that Plaintiffs' straight-time contract claim is preempted by the FLSA, or unsupported by facts in the summary judgment record. Finally, it argues that Plaintiffs have insufficient evidence of willfulness or lack of good faith for those issues to reach the

jury.    Plaintiffs' motion seeks to establish the Company's liability for a category of travel time involving an overnight stay which they claim is established by undisputed facts.

## A.    Motion to Decertify.

Scaffolding Solutions has moved to decertify the class on the grounds that Plaintiffs are too dissimilar to litigate collectively under the Act.    Under the FLSA, plaintiffs may bring collective action against an employer alleged to have violated the Act's substantive provisions.    The Act permits collective action but requires that no employee be made "a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).

Assembling a class under Section 216(b) generally involves a preliminary determination to give notice to potential class members by conditionally certifying the class and allowing potential class members to "opt in" by filing written consents. Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009).    Following conditional certification and notice, if the defendant believes individual employees or groups of employees are not similarly situated, it may move to "decertify" the class.    Id.    At that point, generally after discovery is complete, the court makes factual findings as to whether the class is truly similarly situated.    Id. (citing

8

Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)).

In considering a motion to decertify alleging dissimilarity of the plaintiffs' class, courts have considered three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." LaFleur v. Dollar Tree Stores, Inc., 30 F. Supp. 3d 463, 468 (E.D. Va. 2014) (quoting Sharer v. Tandberg, Inc., No. 06-CV-626, 2007 WL 676220, at *2 (E.D. Va. Feb. 27, 2007)).

Scaffolding Solutions primarily relies on its claim of disparate factual settings and individual defenses to Plaintiffs' claims.  It argues decertification is appropriate because various Plaintiffs testified in depositions that they sometimes drove private vehicles to the jobsite, or that they were not always required to report to the Chesapeake branch. E.g., Epps Dep. 47:20-49:6; Chad Schley Dep. 17:21-18:2 (ECF No. 57-4 at 219-20); Wall Dep. 18:14-19:2; see also Kroupa Dep. 75:1-76:18. The Company's brief argues at length regarding the various Plaintiffs who admitted that they sometimes reported directly to a jobsite without reporting to Chesapeake first.

(ECF No. 57 at 5).[3]   But it is undisputed that all Plaintiffs worked for the same company doing the same work and were subject to the same challenged time-keeping policy. As a result, the compensation policy issues to be litigated relate to whether Scaffolding Solutions is liable to <u>non-drivers</u> because they were required to report to Chesapeake – at the beginning and end of the workday – and perform more than de minimis work.   <u>See</u> <u>IBP, Inc. v. Alvarez</u>, 546 U.S. 21, 37 (2005).   Plaintiffs who drove the company vehicles did not do so every day, meaning they were still subject to the portable timeclock policy on non-driving days. <u>E.g.</u>, Eternal Kamal Allah Dep. 11:5-11 (ECF No. 57-1 at 12); Brandon Dunbar Dep. 13:1-10 (ECF No. 57-2 at 95); Newsome Dep. 20:1-16; Williams Dep. 10:7-13.   It is that policy – not the individual hours worked – which will be addressed collectively in these proceedings.   <u>See Rawls</u>, 244 F.R.D. at 302 (denying motion to decertify and addressing defenses by "subclasses" of plaintiffs).

In any FLSA claim there will be issues of proof concerning hours worked and days on which each individual plaintiff

---

[3] Scaffolding Solutions also points out that Plaintiffs received their regular rate for travel when they acted as Drivers transporting other workers.   <u>E.g.</u>, A. Davis Dep. 30:10-21; Newsome Dep. 20:22-21:7; Malik Williams Dep. 7:5-14 (ECF No. 57-6 at 280).   But Plaintiffs have already stipulated that Drivers were properly paid their hourly rate for travel time and are not seeking to recover for unpaid wages when any Plaintiff was acting as a Driver. (<u>See</u> ECF No. 71 at 1-2).

reported. These questions affect the damages due to an individual plaintiff, not the company's liability to employees as a class. See Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011). Collective action does not require that there be "no differences among class members," nor does it prohibit individualized inquiry "in connection with fashioning the specific relief or damages to be awarded to each class member." Lafleur, 30 F. Supp. 3d at 474 (quoting Houston v. URS Corp., 591 F. Supp. 2d 827, 832 (E.D. Va. 2008)).

The issues Scaffolding Solutions' claims are "individual defenses" may be relevant to the question of whether Scaffolding Solutions implemented a policy which violates the Act. But they do not prevent the Plaintiffs from litigating that policy question collectively. Moreover, even if the Plaintiffs succeed in establishing that the Company's policy did violate the Act, if the evidence also establishes that individual Plaintiffs did not report to Chesapeake as directed or were otherwise not engaged in compensable work on a particular day, they would not be permitted to recover for that day. See Butler v. DirectSat USA, LLC, 47 F. Supp. 3d 300, 312 (D. Md. 2014) (denying motion to decertify despite individual damage differences in 26-person class). There is no claim by Scaffolding Solutions that individual Plaintiffs, or subgroups of Plaintiffs, were subject to different policies or procedures which would affect the

11

ability of the court to resolve the liability questions collectively. Accordingly, this Report recommends the court DENY Scaffolding Solutions' Motion to Decertify the Class (ECF No. 56).

**B. Cross Motions for Partial Summary Judgment.**

No party is seeking summary judgment on the entire case as both sides agree that disputed issues of fact preclude resolving the Plaintiffs' challenge to the portable timeclock policy on summary judgment. Both sides, however, seek partially dispositive rulings to narrow the issues for trial.

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the

absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322-25.   When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>see</u> <u>Anderson</u>, 477 U.S. at 255. If the court does not grant the motion entirely, it may still enter an order stating any material fact that is not in dispute and treating the fact as established in the case. Fed. R. Civ. P. 56(g).

Scaffolding Solutions' Motion for Partial Summary Judgment seeks judgment on Plaintiffs' straight-time contract claims, allegedly premised on a "mutual understanding" of the term "work" which Plaintiffs seem to suggest is co-extensive with the FLSA's definition.   Indeed, Plaintiffs' primary claim is that they were denied pay for activities and travel which occurred off-the-clock, and which they contend is compensable under the

13

FLSA and their alleged "mutual understanding." Analysis of the willfulness/good faith issue and of Plaintiffs' Motion for Partial Summary Judgment on the claims of non-local Drivers also rests on the FLSA provisions requiring compensation for work-related travel, and whether the Company's actions recklessly contravened those mandates. Accordingly, the legal analysis begins by examining those frequently litigated terms which have produced a well-documented, if not easily applied, body of law.

Where employees seek compensation for work-related travel time, "[t]he critical inquiries . . . are <u>when</u> and <u>where</u> the workday starts, for once it begins, the continuous workday rule applies" and exceptions to the Act for travel and preliminary activities do not apply. <u>Gortat v. Capala Bros.</u>, 257 F.R.D. 353, 361 (E.D.N.Y. 2009). Because the FLSA requires employers to pay their employees for all time spent working on their behalf, Scaffolding Solutions would violate the Act if it failed to compensate the Plaintiffs after they began to work. <u>See Lee v. Am-Pro Protective Agency, Inc.</u>, 860 F. Supp. 325, 327-28 (E.D. Va. 1994).

The Act does not define the term "work," and the Supreme Court has previously defined it broadly. <u>Alvarez</u>, 546 U.S. at 25-26. Partly due to the Court's expansive definition of "work", Congress enacted the Portal-to-Portal Act, 29 U.S.C. §§ 251-62, to amend the FLSA and exempt from compensation certain

14

activities that had previously been treated as compensable under the Act. Alvarez, 546 U.S. at 27; Integrity Staffing Solutions, Inc. v. Busk, 135 S. Ct. 513, 517 (2014). For example, "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities" are no longer compensable under § 4 of the Portal-to-Portal Act, and thus not work. 29 U.S.C. § 254(a).

Although the Portal-to-Portal Act eliminated employer liability for previously compensable activity, "[o]ther than its express exceptions for travel to and from the location of the employee's 'principal activity,' and for activities that are preliminary or postliminary to that principal activity, the [Act did] not purport to change [the Supreme] Court's earlier descriptions of the terms 'work' and 'workweek,' or to define the term 'workday.'" Alvarez, 546 U.S. at 28. Thus, it remains the rule that during a continuous workday, any walking, riding, or traveling time that occurs "after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of [§ 4(a) of the Portal-to-Portal Act], and as a result is covered by the FLSA." Id. at 37. The focus of later litigation has been on the meaning of the term "principal activity," which the

15

Supreme Court has held to include those activities which are "integral or indispensable" to the principal activity employees are engaged to perform.  Integrity Staffing, 135 S. Ct. at 517.

Federal regulations related to travel, therefore, expressly contemplate compensation for travel time under certain circumstances – namely when it includes or follows "principal" activity or any activity that is integral or indispensable to the employees' principal activity.

> Time spent by an employee in travel as part of his principal activity, such as travel from jobsite to jobsite during the workday, must be counted as hours worked.  Where an employee is <u>required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work</u>, and must be counted as hours worked regardless of contract, custom, or practice.

29 C.F.R. § 785.38 (emphasis added).

A separate provision of the CFR addresses travel that involves an overnight stay.  Under this section travel which "cuts across the employee's workday" and keeps the employee away from home overnight is "clearly worktime."  29 C.F.R. § 785.39; see also Abell v. Sky Bridge Res. LLC, 715 F. App'x 463, 475 (6th Cir. 2017).  The same rule applies if the overnight travel occurs during the same hours on a non-working day.  § 785.39.  Such travel is compensable because the employee "is simply substituting travel for other duties."  Id.

16

The parties do not dispute these governing principals. Scaffolding Solutions argues that as applied to the undisputed facts they preclude Plaintiffs' recovery for unpaid straight time under any contract theory of recovery.  The Company also argues it implemented its portable timeclock policy in objective good faith and that Plaintiffs' claims for a willful violation of the Act fail as a matter of law.

1.  <u>Undisputed facts establish that Plaintiffs' straight-time stand-alone contract claim is unsupported by the record.</u>

Scaffolding Solutions first argues that it is entitled to summary judgment on Plaintiffs' state law breach of contract claim because that claim is preempted by the FLSA.[4] Citing the Fourth Circuit's decision in <u>Anderson v. Sara Lee Corp</u>, 508 F.3d 181 (4th Cir. 2007), Scaffolding Solutions contends that Plaintiffs' contract claim lacks a basis in law or private agreement independent from the FLSA and merely seeks to invoke state law remedies for alleged violations of the federal statute.

"Federal law may preempt state law under the Supremacy Clause in three ways—by 'express preemption,' by 'field preemption,' or by 'conflict preemption.'" <u>Anderson</u>, 508 F.3d at 191; <u>see also</u> <u>Martinez-Hernandez v. Butterball, LLC</u>, 578 F.

---

[4] Scaffolding Solutions' arguments as to preemption in its motion for partial summary judgment and its motion to dismiss are essentially the same.

Supp. 2d 816, 818 (E.D.N.C. 2008). Any analysis of this issue begins with a presumption against preemption—courts will not displace state law with federal law unless Congress clearly intended to do so. See Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992).

Scaffolding Solutions does not contend that the FLSA displaces all state law claims related to employment contracts. Indeed, as this court noted in its January 4 Order, employees are free to pursue such claims on contracts with terms more generous than the guarantees in the FLSA. See Jan. 4 Order 5-6 (ECF No. 55); see also Walker v. Serv. Corp. Int'l, No. 4:10cv48, 2011 WL 1370575, at *6 (W.D. Va. Apr. 12, 2011). Rather, the Company argues that Plaintiffs' state law claims in this case "merely duplicate[] FLSA claims" and are therefore preempted. See Anderson, 508 F.3d at 194.

Scaffolding Solutions' preemption theory most resembles obstacle preemption, a type of conflict preemption that arises when "FLSA-based state claims 'stand[] as an obstacle to the accomplishment of the full purposes and objectives of' the FLSA." Anderson, 508 F.3d at 191-92 (alteration in original) (quoting Worm v. Am. Cyanamid Co., 970 F.2d 1301, 1305 (4th Cir. 1992)). In Anderson, the plaintiff class asserted five claims under North Carolina law seeking unpaid wages for time spent donning and doffing required uniforms. Id. at 184. The

18

plaintiffs relied entirely on the FLSA to create their rights but sought state law remedies that were "more generous than those provided in the FLSA enforcement scheme." Id. at 192-93. The Fourth Circuit affirmed dismissal of several claims under Fed. R. Civ. Proc. 12(b)(6) and held that the remainder were preempted under the FLSA. Id. at 187. It reasoned that because Congress intended the remedies in the FLSA to be the exclusive means of enforcing its provisions, the plaintiffs' attempt to invoke state law created an "obstacle to the accomplishment of the full purposes and objectives of" the FLSA. Id. at 193-94 (quoting Worm, 970 F.2d at 1305).

Plaintiffs insist that this case is distinguishable from Anderson. They maintain that their state law contract claims are wholly distinct from the FLSA as to both rights and remedies. Plaintiffs argue that their rights instead come from employment contracts between individual class members and Scaffolding Solutions. According to Plaintiffs, "[t]he terms of the employment contracts were not derived from provisions of the FLSA, but rather from a mutual understanding of the plain English meaning of the term 'work.'" Pls.' Mem. Opp. Summ. J. 16 (ECF No. 71 at 16). The term "work," as Plaintiffs contend the parties to these contracts understood it, included those activities that Plaintiffs allegedly performed at the Chesapeake Branch each morning and at the end of the day as well as the

19

corresponding travel to and from the jobsite for which they have
not received their regular rate of pay. Id.

Alleging the existence of an employment contract may
distinguish this case from Anderson, where the claimants
directly cited to the FLSA as their source of wage entitlement.
But whereas the standards for Federal Rule 12 and 15 required
this court to credit Plaintiffs' allegations at the pleadings
stage when it permitted assertion of the contract claim, (see
ECF No. 55 at 6-7), that distinction is unavailing on summary
judgment. The present record contains insufficient evidence to
establish a valid, enforceable contract covering the disputed
activities—except, possibly, by incorporating FLSA definitions
and requirements. But such a reference would drag those claims
back within the scope of preemption under Anderson. To survive
preemption, Plaintiffs' state law contract claims must rest on
independent evidence of the "mutual understanding" on which they
are allegedly based. Even viewing the evidence in the light most
favorable to Plaintiffs, it is insufficient to sustain their
separate contract claim.

To recover on a breach of contract claim under Virginia
law, a plaintiff must establish three elements: (1) a legally
enforceable obligation of a defendant to a plaintiff; (2) the
defendant's violation or breach of that obligation; and (3)
injury or damage to the plaintiff caused by the breach of

obligation. Filak v. George, 594 S.E.2d 610, 619 (Va. 2004). The formation of a valid contract requires a "meeting of the minds"—agreement by both parties as to the terms of the contract and their respective duties. See Phillips v. Mazyck, 643 S.E.2d 172, 175 (2007). Terms in an oral contract "must be so precise that neither party could reasonably misunderstand" them. Woodbridge v. Outland, 183 S.E.2d 162, 165 (Va. 1971).

The evidence in the record here does not support an employee-employer agreement entitling Plaintiffs to compensation for the alleged beginning- and end-of-day activities which Plaintiffs claim were mutually understood as "work." What little testimony on the issue can be found in fact bolsters the Company's contention that no such "meeting of the minds" ever materialized. As such, Plaintiffs cannot establish that a valid, enforceable contract covering the disputed activities ever existed, at least without referencing the requirements of the FLSA.

In their brief, Plaintiffs claim that Scaffolding Solutions and its employees "had a mutual understanding that Plaintiffs would be paid their normal hourly rates for time worked." (ECF No. 71 at 18). They cite to the 30(b)(6) deposition of Roger Jetton, Vice President of Scaffolding Solutions. The most pertinent exchange in that deposition reads:

Q [Plaintiffs' Counsel]. Do you agree that Scaffolding Solutions agreed to pay each of the Plaintiffs his or her hourly rate for each hour of work, up to 40 hours in a particular work week?

A [Roger Jetton]. What is your definition of work?

Q. ... Let's say the word work means whatever the court tell us it means at the end of this case. Is that a fair definition of work?

A. The court needs to tell me what that is.

Q. If we get to that point, it will tell both of us, I assume. Here's my question. Again, some of this seems so simplistic and I apologize. When an employee works for Scaffolding Solutions, you would agree with me, would you not, that for each hour that the law says counts as work, that person is entitled to be paid their hourly rate. Is that a true statement?

A. I accept your explanation.

Q. I'm probably a little wrong because if it was over 40 hours in a work week the law would say they get overtime. But we agree on that?

A. Correct.

Q. For every hour up to that 40, they are entitled to be paid their hourly rate; true statement?

A. Yes, sir.

Q. And if an employee worked for a particular hour of time, in a particular work week, and was not paid for that hour, do you agree with me that he or she is owed their hourly rate for that hour?

A. If they are not paid, I would want to know what they were doing and why they were not paid.

Q. That's a fair question that you should ask. So let me say this: if the court in our case determines that that particular employee was doing what the law calls work and was required to be paid for that hour, would you agree with me that that person would be

22

legally entitled to be paid that hourly rate for that hour?

A. We will follow the court's decision.

Jetton Dep. 32:5-33:21. Far from demonstrating mutual understanding, this testimony expressly confirms the Company's position that it made no express agreement that compensation would be due for the time in dispute. Individual employees did testify in depositions that they believed Scaffolding Solutions owed them wages for unpaid work, referring to those activities they allege took place before they were permitted to clock in or after they were required to clock out. E.g., Jackson Dep. 11:17-22; Dunbar Dep. 6:9-17. But bare assertions by one contract party that some work went unpaid are no replacement for evidence of a mutual understanding whereby Scaffolding Solutions privately agreed to pay its employees for all activities undertaken at the beginning and end of the workday. Contrary to Plaintiffs' implications, Scaffolding Solutions' corporate designee admitted nothing more than what the FLSA says: that employees are entitled to wages for hours that the FLSA says are work. That tautology gets Plaintiffs no closer to a valid, independent contract covering the disputed morning and evening activities, because nowhere in his deposition did Scaffolding Solutions' representative agree that the employment contracts at issue here covered those activities.

23

Plaintiffs noted at oral argument that the employer-employee relationship is a contractual relationship under Virginia law and that the parties have already stipulated that Plaintiffs were at-will employees. See Cty. of Giles v. Wines, 546 S.E.2d 721, 723 (Va. 2001); Final Pretrial Order 2 (ECF No. 83 at 2). Again, merely establishing that some contract for employment existed between the parties does not prove that contract covered the activities in question. The FLSA permits employers and employees in their private agreements to define "work"—that is, what activities entitle the employee to compensation—however they wish, so long as those agreements satisfy the Act's minimum wage and overtime provisions. See Balducci v. Chesterfield Cty., 187 F.3d 628, 1999 WL 604040 (4th Cir. 1999) (unpublished table opinion) (rejecting gap time claim under FLSA but suggesting that state contract law may provide a remedy); Monahan v. Cty. of Chesterfield, 95 F.3d 1263, 1284 (4th Cir. 1996) ("Simply put, if the terms of the employment agreement do not violate the FLSA, freedom of contract prevails."). The Company's representative acknowledged its right to do so. See Jetton Dep. 63:5-6 ("We have not defined work by the law. We have our perspective of work.").

Plaintiffs have already withdrawn their FLSA minimum wage claim, acknowledging that their compensation arrangement with

24

Scaffolding Solutions did not violate that requirement.[5] Pls.'
Suppl. Rule 26(a)(1) Initial Discl. 12-13 (ECF No. 57-9 at 12-
13). Accordingly, as far as the obligation to pay minimum wage
is concerned, the parties here were free to agree on a
compensation scheme that excluded the morning and evening
activities from compensable work. Whether the agreements in this
case did so would ordinarily be a matter for state law. See
Monahan, 95 F.3d at 1279-80. But even when construed in
Plaintiffs' favor, the record here does not reveal a genuine
issue of material fact on this question. Plaintiffs have not
identified any evidence attributable to Scaffolding Solutions,
such as a policy statement or testimony from a representative,
to support the existence of oral agreements that employees would
be paid for the morning and evening activities in question.

By contrast, the Company has produced substantial evidence
that it made no such agreement. It employed a travel stipend
system that paid employees who rode in company vehicles for
certain trips a "reimbursement" according to the mileage, rather
than at their regular rate. Jetton Dep. 13:25-14:6, 20:5-15.
This travel stipend applied to trips from the Chesapeake branch

---

[5] As illustrated by Department of Labor guidance, payment at a
rate above the minimum wage for some but not all hours worked
(as the FLSA defines "work") can still satisfy the minimum wage
requirement if the average hourly rate across all hours worked
meets the minimum rate. See 29 C.F.R. § 778.322; see also Lundy
v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 115
(2d Cir. 2013).

to the first job site of the day and from the last job site of the day back to the Chesapeake branch. Jetton Dep. 9:9-19, 31:15-32:4. Employees who drove company vehicles, meanwhile, were paid their regular rate for all time spent driving. Jetton Dep. 24:4-8. Furthermore, the Company distinguished between the activities at issue in this case and others it considered "work," such as the Monday safety meeting and the moving or loading of materials. Jetton Dep. 60:20-61:20. These discrepancies all refute the notion that Scaffolding Solutions agreed by oral contract to compensate Plaintiffs at their hourly rate for the disputed morning and evening activities as "work."

Perhaps recognizing the evidentiary weakness of their claims, Plaintiffs cite a pair of cases for the proposition that a claim for unpaid wages may reference the FLSA without being preempted by it. See Martinez-Hernandez v. Butterball, LLC, 578 F. Supp. 2d 816 (E.D.N.C. 2008); Osby v. Citigroup, Inc., No. 07cv06085, 2008 WL 2074102 (W.D. Mo. May 14, 2008). Those cases did not, however, present the question of whether a private employment contract entitled plaintiffs to compensation for some disputed activity. The plaintiffs in Martinez-Hernandez brought a claim under North Carolina's Wage and Hour Act[6] and relied on FLSA precedent only as persuasive authority for what that statute considered "work." 578 F. Supp. 2d at 820. In an action

---

[6] N.C. Gen. Stat. § 95-25.6 (2018).

under that statute, "[w]hether a particular activity constitutes "work" is a matter of law to be determined, <u>not by the employer</u>, but under the Wage and Hour Act with the interpretive guidance of the FLSA, where appropriate." <u>Id.</u> at 821 (emphasis added). <u>Osby</u> meanwhile considered a common-law action for unjust enrichment. 2008 WL 2074102, at *1. The court recognized that the FLSA could preempt duplicative state-law claims but, much as this court did when it granted Plaintiffs' motion for leave to amend, held that the plaintiffs had "satisfie[d] the minimal showing required to survive a motion for judgment on the pleadings." <u>Id.</u> at *2.

This case differs from both <u>Martinez-Hernandez</u> and <u>Osby</u> because the source of Plaintiffs' rights is alleged to be a wholly private agreement based on "mutual understanding." And as noted above, the parties to that agreement were entitled to define their respective obligations as they desired, subject only to the minimum requirements of the FLSA or other applicable law. It is here that the proof problem forecast in this court's earlier order rears its head. <u>See</u> Jan. 4 Order 6. Lacking evidence from Scaffolding Solutions to establish the necessary contract terms, Plaintiffs are left with nowhere to turn but the FLSA and its definition of work — a path that leads directly to preemption.

In summary, Plaintiffs have not identified sufficient evidence in the record to create a triable issue of fact as to whether their oral employment contracts entitle them to unpaid straight-time wages for activities carried out at the Chesapeake branch and their related travel. Scaffolding Solutions is therefore entitled to judgment as a matter of law on Plaintiffs' state law contract claim and this Report recommends GRANTING Defendant's Motion for Partial Summary Judgment (ECF No. 56) as to Count II of Plaintiffs' First Amended Complaint.

2.   <u>Scaffolding Solutions has not established a right to summary judgment on Plaintiffs' claims of willfulness, or its own defense of good faith.</u>

A two-year statute of limitations applies to ordinary violations of the FLSA, but a three-year statute of limitations applies to willful violations.   29 U.S.C. § 255(a).[7]   When enacted, the FLSA did not provide a limitations period; therefore, actions were governed by state statutes of limitations. <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 131 (1988).   In the Portal-to-Portal Act, "as part of its response to [the Supreme] Court's expansive reading of the FLSA, Congress enacted [a] 2-year statute to place a limit on employers' exposure to unanticipated contingent liabilities." <u>Id.</u> at 131-

---

[7] The statute provides, in relevant part, that an action under the FLSA "may be commenced within two years after the cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

28

32.   In 1966, Congress enacted a three-year limitation period for willful violations.  Id. at 132.  The two-tier statute of limitations now in place "makes it obvious that Congress intended to draw a significant distinction between ordinary violations and willful violations."  Id. at 132.

"[T]he word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional,'" and "is generally understood to refer to conduct that is not merely negligent."  Id. at 133.  As articulated by the Supreme Court, a violation is willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128-29 (1985) (analyzing willfulness under the Age Discrimination in Employment Act); see McLaughlin, 486 U.S. at 133-35 (incorporating the standard of willfulness articulated in Thurston to violations of the FLSA).  "If an employer acts unreasonably, but not recklessly, in determining its legal obligation," it is not considered willful.  McLaughlin, 486 U.S. at 135 n.13.  The employee bears the burden of proving a willful violation of the FLSA.  Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 358 (4th Cir. 2011) (citing McLaughlin, 486 U.S. at 135).

Related to the issue of willfulness, an employer may avoid liability for liquidated damages under the FLSA if it persuades

the court that it acted "in good faith" and "had reasonable grounds for believing that [the] act or omission was not a violation" of the FLSA.  Epps v. Arise Scaffolding & Equip., Inc., No. 2:10cv189, 2011 WL 1566001, at *2 (E.D. Va. Apr. 22, 2011) (quoting 29 U.S.C. § 260).  The burden of demonstrating good faith rests with the employer.  Id. (citing Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 357 (4th Cir. 1994).  It is not sufficient that the employer subjectively acted in good faith; rather, the evidence must be sufficient to demonstrate objective good faith.  See Mayhew v. Wells, 125 F.3d 216, 220 (4th Cir. 1997); see also Burnley v. Short, 730 F.2d 136, 140 (4th Cir. 1984) (an employer may not remain blissfully ignorant of FLSA requirements).  Even with evidence of objective good faith, the decision whether to award liquidated damages still rests in the sound discretion of the court.  Epps, 2011 WL 1566001, at *2 (citing 29 U.S.C. § 260).

Scaffolding Solutions argues that the Plaintiffs have failed to produce sufficient evidence of willful violations to trigger the three-year statute of limitations.  The Company also contends that its objective good faith in implementing the portable timeclock policy should preclude an award of liquidated damages.  These two inquiries are sometimes related.  See Brinkley-Obu, 36 F.3d at 357 (recognizing a jury finding of non-willful behavior can provide an objective basis on which to rest

a finding of good faith). But because of the differing burdens of proof and the statutory presumption of liquidated damages in the absence of good faith, a finding of no willful violation does not automatically equate to objective good faith. Epps, 2011 WL 1566001, at *3.

Plaintiffs argue that Scaffolding Solutions' actions were willful and lacked objective good faith. In support of both claims they observe that the Company previously paid employees from the beginning of the work day at the Chesapeake branch until their return and did not consult with counsel or review FLSA guidance prior to implementing the portable timeclock policy. Jetton Dep. 70:17-71:3, 82:9-83:8. They also argue that temporary employees who did the same work through temporary agencies were paid for the entire day, including their morning and evening commute time. Matthew Sullivan Decl. ¶¶ 62-64 (ECF No. 71-1 at 8). In addition, Plaintiff's evidence suggests that the portable timeclock policy had the effect of reducing their hourly wages by 20% and that most of the Plaintiffs complained about the reduction and heard others complain to Scaffolding Solutions' managers after the policy change. E.g., Dunbar Answer to Interrog. No. 15 (ECF No. 71-11 at 11-12); Newsome Answer to Interrog. No. 15 (ECF No. 71-16 at 10). Finally, some Plaintiffs have alleged that they attempted to record the time as compensable and management altered the time sheet to remove

31

the time.  E.g., Cowell Answer to Interrog. No. 2 (ECF No. 71-7 at 2-3); Hecker Answer to Interrog. No. 2 (ECF No. 71-13 at 2-3); see also Kroupa Dep. 35:1-36:15.[8]

For its part, Scaffolding Solutions concedes that its portable timeclock policy represented a change, but believes the change is consistent with federal law.  The Company disputes that any compensation was due for travel to and from the worksite on local work days because it contends Plaintiffs could, and often did, drive directly to the jobsite from their home.  See, e.g., Smith v. Aztec Well Servicing Co., 462 F.3d 1274 (10th Cir. 2006) (commute time not rendered compensable by de minimis activities before and during the commute).  The Company also notes that on occasions when Plaintiffs performed work at the Chesapeake Branch - such as reporting to a mandatory safety meeting on Mondays - they were paid for that work. Jetton Dep. 60:20-61:6.  The Company's testimony also establishes that Plaintiffs were told to record hours worked at

---

[8] Plaintiffs also argue that Scaffolding Solutions' willfulness is supported by the Company's presumed knowledge of a similar case brought by the same lead Plaintiff in this case. Epps v. Arise Scaffolding & Equip. Co., No. 2:10cv189, 2011 WL 1566001 (E.D. Va. Apr. 22, 2011). Although that case involved similar claims for compensation by scaffolding erectors, the court ultimately did not rule on the merits. One Defendant settled claims after the court denied summary judgment. Moreover, Scaffolding Solutions' management has stated that they were unaware of the court's prior opinions. Jetton Dep. 87:2-25. Thus, the existence of this prior precedent has little value in assessing the Company's intent.

the Chesapeake Branch if they were involved in necessary loading of materials or other work.  Jetton Dep. 61:7-20.

A number of district courts have declined to resolve questions of willfulness or good faith when liability under the Act remains in dispute.  See, e.g., Rehberg v. Flowers Baking Co. of Jamestown, 162 F. Supp. 3d 490, 515 (W.D.N.C. 2016) (denying Defendant's motion for summary judgment on willfulness "without prejudice" despite Plaintiff's failure to identify "convincing evidence of willful violations"); Regan v. City of Charleston, No. 2:13cv3046, 2015 WL 5331627, at *14 (D.S.C. Sept. 14, 2015) (same, and collecting cases from Minnesota, Florida and Texas deferring questions of willfulness and good faith when liability remains in dispute).  The Fourth Circuit has previously observed that issues of willfulness will frequently turn on questions of witness credibility.  Desmond, 630 F.3d at 358-59 (vacating grant of summary judgment on willfulness based on material facts in dispute); Martin v. Deiriggi, 985 F.2d 129, 136 (4th Cir. 1992) (affirming district court's finding of willfulness based in part on witness credibility); Lyle v. Food Lion, Inc., 954 F.2d 984, 987-88 (4th Cir. 1992) (noting district court's willfulness finding required it to assess witness credibility).  In this case, findings on good faith or willfulness will necessarily involve questions of the employer's intent in changing the time clock policy.  See

<u>Martinez-Hernandez v. Butterball, LLC</u>, No. 5:07cv174, 2011 WL
4591073, at *4 (denying summary judgment on good faith when
genuine issues of fact remain concerning employer's intentions
and reasonableness of steps taken to ensure compliance).   These
questions remain sharply contested.   If, as Plaintiffs contend,
Scaffolding Solutions' policy change was driven by financial
hardship, with full knowledge of a contrary obligation under the
law, they may establish a willful violation.   But, if - as the
Company claims - it crafted a modified time-keeping and
reporting procedure intended to comply fully with FLSA mandates,
its conduct may be objectively in good faith.   The undisputed
facts do not permit the court to resolve these questions on
summary judgment.   Accordingly, this Report recommends the court
DENY Scaffolding Solutions' Motion for Partial Summary Judgment
on the issues of willfulness and good faith.

> 3.   <u>Plaintiffs' undisputed facts establish that Scaffolding
> Solutions is liable for uncompensated travel time
> resulting in an overnight stay.</u>

Plaintiffs' Motion for Partial Summary Judgment seeks to
establish the Company's liability for overtime compensation due
to non-driver employees whose travel during regular working
hours took them away from home.   See <u>Abell</u>, 715 F. App'x at 475.
They have produced deposition testimony establishing that all of
the Plaintiffs occasionally travelled out of town for work to
locations throughout Virginia and regionally to Maryland,

Pennsylvania, Connecticut, and the Carolinas. See Final
Pretrial Order 2; Allah Dep. 36:4-22; Fulbright Dep. 34:18-35:4;
Switzer Dep. 66:14-67:12. They have also produced company
records establishing that at least three employees were required
to travel out of town - as unpaid non-drivers - during weeks in
which their total hours worked exceeded 40. See Reply Br. Exs.
1-3 (ECF Nos. 88-1, -2, -3). The Company's Employee Handbook
also provides that the "[n]ormal working hours for Scaffolding
Solutions are from 7:00 a.m. to 4:00 p.m." Pls.' Mem. Supp.
Mot. Partial Summ. J. Ex. 3, at 20 (ECF No. 80-3 at 3). This is
consistent with testimony from Scaffolding Solutions, See
Kroupa Dep. 47:13-48:12, 78:14-79:8, and several Plaintiffs,
see, e.g., Fulbright Dep. 11:7-21; Allah Dep. 24:17-25:10.

As explained above, federal regulations issued by the
Department of Labor help define when travel time of this sort is
compensable. "The general rule is that 'normal travel time from
home to work is not work time . . . whether [the employee] works
at a fixed location or at different job sites.'" Treadway v.
BGS Constr., Inc., No. 5:06cv191, 2007 WL 2815439, at *3 (S.D.W.
Va. Sept. 25, 2007) (alteration in original) (quoting 29 C.F.R.
§ 785.35). But travel during normal working hours which keeps
an employee away from home overnight is "clearly worktime." 29
C.F.R. § 785.39. The same rule applies to travel occurring
during the corresponding hours on non-working days. Id.; see

also <u>Troutt v. Stavola Bros.</u>, 905 F. Supp. 285, 301 (M.D.N.C. 1995) (awarding compensation for out of town weekend travel documented to have occurred during plaintiff's normal working hours).

Scaffolding Solutions has admitted that during these trips non-drivers were not paid their hourly rate but instead received the Company's travel stipend. Jetton Dep. 28:18-31:9.      In response to Plaintiffs' motion, Scaffolding Solutions does not really dispute the application of the federal rule to these non-driver employees.   In addition, at oral argument, the Company conceded that it could not claim any credit against wages for the mileage stipend it did pay.   It argues, however, that summary judgment is not proper because the Plaintiffs' arguments "fail to take into account the time records" and individual differences among the Plaintiffs.   <u>See</u> Def.'s Mem. Opp'n Pls.' Mot. Partial Summ. J. 3-4 (ECF No. 86 at 3-4). It argues that Plaintiffs' evidence is insufficient to establish all the elements of their claim for unpaid overtime and that Plaintiffs cannot use the summary judgment rule to obtain only partial resolution of their claims.   This argument perhaps reads too much into Plaintiffs' request for partial summary judgment.

Rule 56 permits a party to move for judgment by identifying "each claim or defense – or the part of each claim or defense – on which summary judgment is sought." Fed. R. Civ. P. 56(a).

Plaintiffs' motion has done exactly that. The facts outlined in the motion and not disputed by Scaffolding Solutions establish that members of the Plaintiffs collective action class were required to travel out-of-town during regular working hours and were not paid wages for the time. The evidence also establishes that at least three Plaintiffs were denied overtime compensation as a result of this policy. Thus, the Plaintiffs <u>as a class</u> were subject to a compensation policy for out of town travel which violated the Act and for which at least some Plaintiffs are entitled to recover. Their motion seeks no more. Plaintiffs have not attempted to prove the exact amount of damages for any individual, though the undisputed facts are sufficient to establish at least some damage. This is sufficient to establish that Scaffolding Solutions will be liable for unpaid overtime wages to any Plaintiff denied such compensation as a result of the Company's payment policy for travel involving an overnight stay. Accordingly, the court should GRANT Plaintiffs' Motion for Partial Summary Judgment.

## II.   <u>RECOMMENDATION</u>

For the foregoing reasons, this Report finds that the Plaintiffs are similarly situated with respect to the challenged compensation policies and therefore recommends that Scaffolding Solutions' Motion to Decertify the class be DENIED; that no dispute of material fact precludes entry of summary judgment

against Plaintiffs on their stand-alone contract claims alleged in Count II of the Amended Complaint and recommends that Scaffolding Solutions' Motion for Partial Summary Judgment on this count be GRANTED; that credibility issues and other disputes of fact preclude summary judgment on claims of willfulness and on Scaffolding Solutions' defense of good faith, and therefore recommends that Scaffolding Solutions' Motion for Partial Summary Judgment on these grounds be DENIED; and that no dispute of material fact precludes entry of partial summary judgment establishing Scaffolding Solution's liability on Plaintiffs' claims of travel time involving an overnight stay and therefore recommends that Plaintiffs' Motion for Partial Summary Judgment as to liability on this ground be GRANTED. Finally, as Defendant's Motion to Dismiss (ECF No. 66) sought relief on grounds identical to those raised in its summary judgment briefing, and because the relief sought by that motion is addressed in the foregoing dispositions, this Report recommends the court TERMINATE the Motion to Dismiss as MOOT.

### III.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of

mailing of this Report to the objecting party, 28 U.S.C. §
636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal
Rules of Civil Procedure. A party may respond to another
party's objections within fourteen (14) days after being served
with a copy thereof.

2. A district judge shall make a de novo determination of
those portions of this report or specified findings or
recommendations to which objection is made.

The parties are further notified that failure to file
timely objections to the findings and recommendations set forth
above will result in waiver of the right to appeal from a
judgment of this court based on such findings and
recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v.
Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce,
727 F.2d 91 (4th Cir. 1984).


/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 2, 2019